The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Steven S. COPELAND, Defendant–Appellant.

No. 96CA1992.

Colorado Court of Appeals, Division IV.

Aug. 6, 1998.

As Modified on Denial of Rehearing Oct. 22, 1998.

Certiorari Granted April 19, 1999.

Gale A. Norton, Attorney General, Eric V. Field, Special Assistant Attorney General, Golden, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Steven S. Copeland, appeals the judgment of conviction entered upon jury verdicts finding him guilty of second degree arson and fourth degree arson, and upon the trial court's determination that he was an habitual criminal. We affirm.

Defendant had previously been a house guest of the victim. After a disagreement, she forced him to leave her house, and he angrily departed. According to the victim, defendant threatened to "make her sorry" for forcing him to leave.

Later, a person fitting defendant's description set fire to one of the victim's cars. On the morning after the arson, the victim discovered that the tires on another vehicle she owned had been punctured. When defendant was arrested, a pocket knife was seized that was later confirmed to be the instrument used to puncture the victim's tires.

Immediately before trial, the prosecution sought to amend the information to include a charge relating to the tire puncturing incident. The trial court denied the motion; however, it later admitted evidence concerning the incident.

## I.

■ Defendant first contends that the trial court erred by admitting evidence of the tire puncturing incident as an uncharged criminal act, and by failing to give a limiting instruction regarding the permissible use of such evidence. We disagree.

Under CRE 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ To have extrinsic act evidence admitted under CRE 404(b), the prosecution must demonstrate that: (1) the evidence relates to a material fact; (2) the evidence is logically relevant; (3) the logical relevance is independent of the intermediate inference that the defendant has a bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

■ The Colorado Rules of Evidence strongly favor the admission of material evidence, *People v. Czemerynski,* 786 P.2d 1100 (Colo.1990), and a trial court has substantial discretion in deciding questions concerning admissibility. *People v. Quintana,* 882 P.2d 1366 (Colo.1994).

Absent an abuse of discretion, a trial court's evidentiary rulings will be affirmed. *People v. Lowe,* 660 P.2d 1261 (Colo.1983). An abuse of discretion does not occur unless a trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Delgado,* 890 P.2d 141 (Colo.App.1994).

Here, the prosecution sought to introduce evidence of the tire puncturing incident as reflecting defendant's grudge against the victim as his motive for the arson. The prosecution also argued that this evidence was admissible as *res gestae* because it was part and parcel of the arson crimes. In addition, the prosecution contended that it was relevant to prove defendant's presence in the area, his identity as the arsonist, and his plan, scheme, and design to take revenge on the victim.

Although the trial court did not explicitly acknowledge the theory on which the evidence was admitted, the court employed language appropriate to a CRE 404(b) analysis, finding that the evidence was logically relevant to show motive, opportunity, plan, and identity.

Defendant argues the evidence was not relevant to establish motive, opportunity, plan, or identity. Regarding motive, defendant notes that the prosecution's theory was that he committed the arson as an act of revenge. Defendant argues that, under this theory, the tire incident did not have any relationship to the arson and thus was not probative of motive.

Although evidence of the tire incident is more directly probative of vengeful intent than motive, the evidence is nevertheless relevant as to motive in burning the car. Evidence that defendant also punctured the victim's tires renders more probable the prosecution's theory that defendant had a motive of revenge when he set fire to the victim's car. *See People v. Carlson,* 712 P.2d 1018 (Colo.1986) (evidence is relevant if it has any tendency to make the existence of any material fact more or less probable than it would be without the evidence). And, this inference is independent of any inference based on the character of defendant.

Having admitted the evidence, the trial court implicitly found that its probative value was not substantially outweighed by the danger of unfair prejudice. We agree with that determination.

Because the trial court's ruling concerning admissibility to prove motive is not manifestly arbitrary, unreasonable, or unfair, it did not abuse its discretion; hence, we need not determine whether the evidence was admissible for any other reason.

## B.

■ We reject defendant's contention that the trial court erred by failing to give a cautionary instruction to limit the purpose

for which the jury could consider the evidence.

■ While it is the better practice to issue a limiting instruction to the jury contemporaneously with the introduction of such evidence, when, as here, such an instruction is not requested, the failure to give one is not reversible error. *See People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977).

### C.

■ Defendant also asserts that admission of the evidence was improper because it was not disclosed until the day of trial. We disagree.

Crim. P. 16 governs the prosecution's obligation to make disclosures to defendant. Crim P. 16 III(g) authorizes the trial court to order a party to permit the discovery or inspection of materials not previously disclosed, to prohibit a party from introducing into evidence materials not disclosed, or to enter such other orders as it deems just under the circumstances.

■ The choice of an appropriate sanction for a violation of a discovery rule lies within the sound discretion of the trial court. *People v. Morino,* 743 P.2d 49 (Colo.App.1987).

Here, sometime before trial, defendant received a copy of the forensics report from the Colorado Bureau of Investigation (CBI) linking him to the tire puncturing incident.

Moreover, in response to defendant's claims at trial of inadequate disclosure, the court allowed defendant to interview the CBI witness before he testified, and ordered that defendant be provided any further written materials in the possession of the prosecution regarding the puncture marks in the tires.

We conclude that the trial court did not abuse its discretion in formulating a remedy for any possible discovery violation.

### II.

■ Defendant contends that the trial court erred when it instructed the jury that the *mens rea* of knowledge or recklessness did not apply to every element of the offense of fourth degree arson specified in §18–4–105, C.R.S.1997. We disagree.

The jury instruction on the elements of fourth degree arson included, as pertinent here, that defendant:

3. knowingly or recklessly, started or maintained a fire,

4. on his own property or that of another, and

5. by doing so placed another person in danger of death or serious bodily injury.

During deliberations, the jury sent a question to the court asking whether the "knowingly or recklessly" mental state applied only to element number three, or whether it also applied to element number five. Over defendant's objection, the court responded that it applied only to element three.

Section 18–1–503(4), C.R.S.1997, provides:

When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears.

Defendant argues that this statute controls the instant case. However, since §18–1–503(4) was enacted in its current form, the supreme court has stated the following with respect to fourth degree arson:

The fourth degree arson statute penalizes those who start or maintain a fire or cause an explosion which subsequently endangers another person or a building or occupied structure. The mental state required for fourth degree arson is that [the] fire or explosion be started or maintained knowingly or recklessly. The prosecution need not prove intent to endanger the person or building.

*People v. Owens,* 670 P.2d 1233, 1238 (Colo. 1983); *see also People v. Garcia,* 189 Colo. 347, 541 P.2d 687 (1975) (holding that, under a predecessor statute, an actor is guilty of arson if he or she purposefully starts a fire, although he or she may not have intended or foreseen the consequences).

We consider the *Owens* ruling dispositive here. Hence, the trial court did not err in its response to the jury's inquiry.

## III.

■ Defendant contends that the trial court erred by failing to continue the habitual criminal portion of the trial to allow his counsel time to investigate whether there were grounds to attack the validity of his prior convictions. We are not persuaded.

■ A motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed in the absence of an abuse of discretion. *People v. Bakari*, 780 P.2d 1089 (Colo.1989).

■ There are no mechanical tests for determining whether the denial of a continuance constitutes an abuse of discretion; rather, it depends on the circumstances present in each case. *People v. Hampton*, 758 P.2d 1344 (Colo.1988).

Regarding habitual criminality, §16–13–103(1), C.R.S.1997, provides that if a guilty verdict is returned upon the substantive offense, the trial court shall conduct a separate hearing as soon as practicable to determine whether the defendant has previous convictions as alleged in the indictment or information.

Here, shortly before trial, defendant moved for a continuance because his separately appointed counsel had not had time to investigate the validity of the alleged prior convictions. The court held a hearing on the motion and informed defendant that if the trial were continued, his speedy trial period would start over from the date of the continuance.

Defendant responded that he was unwilling to waive his speedy trial rights and, against his counsel's advice, withdrew his motion for continuance. The trial court indicated that he was therefore giving up his right to have separate counsel investigate the prior convictions and exceptions to the applicability of the time bar contained in §16–5–402, C.R.S.1997.

Three days after defendant was convicted of arson in the substantive phase of the trial, he again moved for a continuance. The trial court denied the motion, noting that it was required by statute to proceed with the habitual criminal phase of the trial "as soon as practicable."

We perceive no abuse of discretion here. Defendant withdrew his initial motion for continuance, against advice of counsel, after learning that a continuance would restart his speedy trial period. Hence, the trial court acted within its discretion by declining to continue the trial at that juncture.

After defendant was convicted in the substantive phase of trial, the trial court was required by §16–13–103(1), C.R.S.1997, to proceed with the criminal habitual phase of trial as soon as practicable. For that reason, the trial court acted within its discretion, and in accordance with the requirements of the controlling statute, in denying defendant's second motion for continuance.

## IV.

Defendant asserts that the trial court erred by admitting Department of Corrections (DOC) records of his prior convictions during the habitual criminal phase of trial. We are not persuaded.

## A.

■ Relying upon §16–13–102, C.R.S. 1997, defendant asserts that the prosecution could not introduce photocopies of the certified copies of district court orders or judgments that are kept on file at the DOC. Rather, he asserts, such must be obtained only from the records of the district courts that issued the judgments.

Section 16–13–102(1), C.R.S.1997, provides:

> On any trial under the provisions of this part 1, a duly authenticated copy of the record of former convictions and judgments of any court of record for any of said crimes against the party indicted or informed against shall be prima facie evidence of such convictions and may be used in evidence against such party. Identification photographs and fingerprints that are part of the record of such former convictions and judgments, or

are part of the records kept at the place of such party's incarceration or by any custodian authorized by the executive director of the department of corrections after sentencing for any of such former convictions and judgments, shall be prima facie evidence of the identity of such party and may be used in evidence against him.

Nothing in this statute requires that the copies to be introduced come directly and exclusively from the particular courts of record. Accordingly, we reject defendant's contention.

## B.

■ Defendant contends that the documents introduced were unauthenticated and unsealed, and thus, the trial court erred in admitting them. We disagree.

Under §16–13–102, C.R.S.1997, the records of conviction must be authenticated. Under this statute, "duly authenticated copy" refers to documents that are found to be what their proponent claims them to be. *See* CRE 901(a).

Under §16–13–102, certified copies of public records provide proper authentication. *People v. Johnson,* 699 P.2d 5 (Colo.App. 1984).

CRE 902 provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to:

A document purporting to bear the signature in his official capacity of an officer or employee of any [state], having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.

Here, the prosecution introduced DOC records of defendant's prior convictions (the "pen pack"). The pen pack included mittimi, fingerprint identification, and photos.

Attached to the pen pack was a "certificate of custodian" in which the custodian certified: (1) that she was the custodian of records of the DOC; (2) that the agency was situated in El Paso County; (3) that in her legal custody were the original files and records of a person previously committed to the DOC; (4) that the photograph, fingerprint record, and commitment attached were copies of the original records of defendant; (5) that she had compared the attached copies with their respective originals then on file at DOC and each was a true and correct copy of the original.

In addition, the document contained an El Paso county district court judge's certification that: (1) he was a judge of the El Paso county district court, a court of record; (2) the custodian was who she claimed to be; (2) she was a legal keeper and the officer having the legal custody of the original files and records of the DOC; (3) her certification was in due form; and (4) that her signature was genuine. Also present was a district court clerk's certification that the judge was who he claimed to be and that his signature was genuine. All three certifications also contained the raised seal of the El Paso County District Court.

There were five mittimus copies that themselves bore photocopied certification and seals from the various district courts. Thus, they were duly authenticated. *See People v. Johnson, supra.* The remaining mittimus copy is authenticated pursuant to CRE 901(b)(7) as a purported public record of conviction from the court and DOC, two of the public offices where items of this nature are normally kept.

In our view, this custodian certification complied with CRE 902(2), making the document self-authenticating with a proper seal. Accordingly, the documents were what the custodian claimed them to be. *See* CRE 901. Hence, we reject defendant's contention.

## V.

■ Finally, defendant contends that the prosecution failed to prove the habitual criminal counts beyond a reasonable doubt. We disagree.

Section 16–13–101(2), C.R.S.1997, provides in pertinent part:

Every person convicted in this state of any felony, who has been three times

previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes, ... shall be punished for the felony offense of which such person is convicted by imprisonment in a correctional facility for a term of four times the maximum of the presumptive range pursuant to section 18–1–105, C.R.S., for the class of felony of which such person is convicted.

Section 16–13–103(4)(b), C.R.S.1997, provides that, when the defendant denies previous convictions, the prosecuting attorney has the burden of proving beyond a reasonable doubt that the defendant has been previously convicted as alleged.

When sufficiency of the evidence is challenged on appeal, our task is to determine whether the evidence, viewed as a whole, and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *People v. Cole,* 926 P.2d 164 (Colo.App.1996).

Here, the prosecution introduced copies of DOC records, *i.e.,* the "pen pack" discussed above, testimony from defendant's former parole officer, and testimony from a fingerprint expert. Such evidence was sufficient to support the trial court's finding of guilt as to the habitual criminal charges beyond a reasonable doubt.

### A.

Defendant nevertheless contends that the DOC records were admissible only as to the issue of identity and were not prima facie evidence that the convictions had in fact occurred. We are not persuaded.

Defendant relies on language contained in §16–13–102, C.R.S.1997, quoted above, to assert that, since the statute specifies that fingerprints and photos are admissible to prove identity, all records from the DOC are admissible *only* to prove identity. However, the first sentence in §16–13–102 pertains to copies of conviction records in general, and allows admission of such copies as prima facie evidence "of such convictions." Nor are

we aware of any authority supporting defendant's argument.

### B.

· [15] Defendant further contends that a discrepancy existed at trial between the charge in Count 9 of the information and the records presented by the prosecution. The record showing the entry of judgment of conviction on Count 9 was signed and dated on March 11, 1988, while the information alleged that defendant was convicted of this crime on March 10, 1988. We disagree that this discrepancy renders evidence of this conviction insufficient as a matter of law.

In *People v. Jones,* 967 P.2d 166 (Colo.App. 1997), a division of this court held that, when the information concerning a habitual criminal count correctly specified the case number, the use of a date of conviction in the jury instructions that differed from that listed in the information was harmless. Although we address sufficiency of evidence, and the division in *Jones* addressed whether the defendant had sufficient notice to defend against the charge, we find its determination relevant.

Here, the date discrepancy was minor and DOC records contained the correct case number and other correct identification information. Hence, evidence existed in the record that the conviction was valid.

The record further indicates that the trial court was aware of the discrepancy when it determined that the prosecution had satisfied its burden of proof. Since evidence existed in the record to support the validity of the conviction, and it was for the trial court to determine the weight and credibility of evidence and to draw all reasonable inferences of fact therefrom, we will not disturb the trial court's determination that the prosecution satisfied its burden of proof despite this minor discrepancy. *See People v. Jones, supra; People v. Cole, supra.*

### C.

■ Defendant also asserts that the prosecution failed to prove that the prior convictions arose out of separate and distinct criminal episodes. While we agree in part, reversal is not required.

In determining the quantum of proof required to show separate and distinct criminal episodes in a habitual criminal proceeding, "criminal episode" should be given the same meaning as under the mandatory joinder statute. *People v. Jones, supra; see* §18–1–408(2), C.R.S.1997. Therefore, a "series of acts arising from the same criminal episode would include physical acts that are committed simultaneously or in close sequence, that occur in the same place or closely related places, and that form part of the schematic whole." *Jeffrey v. District Court,* 626 P.2d 631, 639 (Colo.1981).

Here, the information in the DOC records, such as the dates on which the crimes were committed, and the type of crime committed, established beyond a reasonable doubt that defendant's convictions arose out of separate and distinct criminal episodes with the exception of the convictions in 81CR985 and 81CR1368.

As to these latter convictions, however, even though we agree that the prosecution failed to prove beyond a reasonable doubt that they arose out of separate and distinct criminal episodes, the effect of this determination is that the two convictions may only be counted as one conviction with respect to the habitual criminal statute. But, the addition of this conviction to the four other prior convictions proven at trial nevertheless constitutes five prior convictions. This more than satisfies the requirement of three prior convictions contained in §16–13–101(2), C.R.S.1997. Any error is, therefore, harmless.

We have considered, and reject, defendant's remaining arguments.

The judgment is affirmed.

Judge RULAND and Judge ROY concur.